IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANGUARD STIMULATION SERVICES, LLC | § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-13-0507 |
| | § | |
| TRICAN WELL SERVICE, L.P. and WELLS FARGO BANK, N.A. | § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vanguard Stimulation Services, LLC ("Vanguard") brought this action against Defendant Trican Well Service, L.P. ("Trican"), seeking a declaration that Vanguard is entitled to funds held in escrow following Trican's purchase of Vanguard's assets.[1] Pending before the court are Trican Well Service, L.P.'s Motion for Summary Judgment ("Trican's Motion for Summary Judgment") (Docket Entry No. 27), Plaintiff Vanguard Services, LLC's Cross-Motion for Summary Judgment ("Vanguard's Motion for Summary Judgment") (Docket Entry No. 29), Trican Well Service, L.P.'s Objections and Motion to Strike Vanguard Stimulation Services, LLC's Evidence ("First Motion to Strike") (Docket Entry No. 34), and Defendant Trican Well Service, L.P.'s Objections and

---

[1] Plaintiff's Original Complaint and Jury Demand ("Complaint"), Docket Entry No. 1.

Motion to Strike Vanguard Stimulation Services, LLC's Reply in Support of its Cross-Motion for Summary Judgment and Evidence in Support of Same ("Second Motion to Strike") (Docket Entry No. 38). For the reasons stated below, Trican's Motion for Summary Judgment will be denied, Vanguard's Motion for Summary Judgment will be denied in part and granted in part, Trican's First Motion to Strike will be granted in part and is otherwise moot, and Trican's Second Motion to Strike will be denied in part and is otherwise moot.

## I. Background

### A. Factual Background

Trican purchased Vanguard's assets in March of 2010. Vanguard agreed to indemnify Trican for any taxes payable by Vanguard for periods before the closing date,[2] and the parties agreed to hold approximately $6 million of the purchase price in escrow.[3] Two scheduled distributions have been made, leaving $2,211,921 in the escrow account. According to the parties, the remaining amount represents the estimated amount of Vanguard's potential tax liability to the State of Texas as of the time of the sale.[4]

---

[2]Asset Purchase Agreement, Exhibit A to Complaint, Docket Entry No. 1-1, p. 22.

[3]Escrow Agreement, Exhibit B to Complaint, Docket Entry No. 1-2, p. 1.

[4]See Equipment Tax, Sales and Use Tax Liability Estimate, attachment to March 1, 2010, email from Gerik Degner to Bill Twomey, Exhibit B to Trican MSJ, Docket Entry No. 27-7, p. 4.

Section 1.3 of the Escrow Agreement requires Vanguard, within five business days of closing, to file with the Texas Comptroller "an application for a 'Certificate of No Tax Due' with respect to [Vanguard] and its operations." Separately, Section 1.4, which governs disbursements from the escrow account, provides four ways for Vanguard to receive payments related to Texas tax liability: Under Sections 1.4(j) and 1.4(k), Vanguard can either (1) obtain a Certificate of No Tax Due "that indicates [Vanguard] has no further liability with respect to Tax owed to the State of Texas," or (2) if applying for such a certificate results in an audit, and Vanguard has to pay taxes, Vanguard can provide proof of payment and seek reimbursement from the escrow account. Alternatively, under Section 1.4(l), Vanguard can either (1) pay any amount of successor liability tax itself and submit proof of payment, or (2) provide "reasonably satisfactory evidence" to Trican that any amount of successor liability tax has been "resolved" and that no further liability exists. Satisfaction of either provision of Section 1.4(l) would constitute a "Release Event" entitling Vanguard to distribution of a "Release Amount" from escrow.

Vanguard requested a Certificate of No Tax Due from the State of Texas in March 2010.[5] The Comptroller responded with Certificates for "Franchise Tax" and "Gross Receipts - Oil & Gas

---

[5]See March 15, 2010, letter from Phil Guertin to Texas Comptroller, Exhibit C to Trican MSJ, Docket Entry No. 27-8.

Well Servicing Tax."[6]  No other certificates were issued.[7]  Based on the two certificates it obtained, Vanguard asked Trican to join it in instructing Wells Fargo to release the remaining escrow funds pursuant to Section 1.4(j).[8]  Trican refused, stating that Vanguard had other unpaid taxes: "Vanguard was not permitted for sales and use tax because it improperly took the position during the course of its operations that such taxes were not owing to the State of Texas."[9]  Trican argued that the two Certificates therefore did not cover all of Vanguard's potential tax liability in Texas.

On January 22, 2013, Vanguard wrote to Trican, stating that, based on the Certificates issued in 2010, it was Vanguard's opinion that all successor liability tax had been resolved and that "Trican has no further liability thereon."[10]  Arguing that a Release Event had occurred under Section 1.4(l), Vanguard forwarded the letter to Wells Fargo, requesting that Wells Fargo release the funds

---

[6]See March 18, 2010, fax from Georgina Chen to Phil Guertin, Exhibit D to Trican MSJ, Docket Entry No. 27-9.

[7]Response to Request for Admission No. 3, Exhibit H to Trican MSJ, Docket Entry No. 27-11, p. 4.

[8]See July 27, 2010, letter from Wayne A. Ross to Michael Kelly, Exhibit E to Trican MSJ, Docket Entry No. 27-10.

[9]See August 12, 2010, letter from Michael Baldwin to Wayne Ross, Exhibit A-3 to Trican MSJ, Docket Entry No. 27-4.

[10]See January 22, 2013, letter from Michael J. Greer to Michael Baldwin, Exhibit A-4 to Trican MSJ, Docket Entry No. 27-5, pp. 5-6.

remaining in the account.[11]   Trican objected to the release of funds.[12]   This litigation ensued.

## B.   Procedural History

Vanguard filed a complaint seeking declarations that a Release Event has occurred and that Wells Fargo should release "the full Remaining Escrow amount" of $2,211,921 plus interest to Vanguard.[13] Trican counterclaimed, seeking declarations that Vanguard has not obtained a Certificate of No Tax Due that satisfies Section 1.4(j) of the Escrow Agreement and that a Release Event has not occurred under Section 1.4(l), meaning that Wells Fargo should not disburse either the remaining escrow funds or a Release Amount.[14]   Vanguard answered the counterclaim[15] but did not assert any affirmative defenses.[16]   Both parties have moved for summary judgment,[17] and Trican has moved to strike portions of Vanguard's evidence.[18]

---

[11]February 12, 2013, letter from Michael J. Greer to Wells Fargo, Exhibit A-4 to Trican MSJ, Docket Entry No. 27-5, pp. 3-4.

[12]February 25, 2013, letter from Alan J. Perkins to Wells Fargo, Exhibit A-5 to Trican MSJ, Docket Entry No. 27-6.

[13]Complaint, Docket Entry No. 1, p. 6 ¶26.

[14]Trican Well Service, L.P.'s Original Answer and Counterclaim ("Counterclaim"), Docket Entry No. 25, p. 16.

[15]Vanguard Stimulation Services, LLC's Answer to Trican Well Service, L.P.'s Counterclaim, Docket Entry No. 26.

[16]See id. at 5.

[17]Trican MSJ, Docket Entry No. 27; Vanguard MSJ, Docket Entry No. 29.

[18]First Motion to Strike, Docket Entry No. 34; Second Motion to Strike, Docket Entry No. 38.

-5-

## II. **Cross Motions for Summary Judgment**

## A. **Legal Standard**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). The nonmovant "must do more than simply show that there

is some metaphysical doubt as to the material facts." <u>Matsushita</u> <u>Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v.</u> <u>Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## B.   Analysis

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." <u>Coker v. Coker</u>, 650 S.W.2d 391, 393 (Tex. 1983). "When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law." <u>DeWitt Cnty. Elec. Co-op., Inc. v. Parks</u>, 1 S.W.3d 96, 100 (Tex. 1999). "When parties disagree over the meaning of an unambiguous contract, '[t]he intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written.'" <u>Texas v. Am. Tobacco Co.</u>, 463 F.3d 399, 407 (5th Cir. 2006) (quoting <u>Purvis Oil Corp. v. Hillin</u>, 890 S.W.2d 931, 935

(Tex. App.—El Paso, 1994, no writ.) "A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." Coker, 650 S.W.2d at 393. "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." Id. at 394. "A court may conclude that a contract is ambiguous even if the parties do not contend it is." Am. Tobacco Co., 463 F.3d at 407 n.14.

1. **Section 1.4(j) is unambiguous, and Vanguard has not satisfied its requirements, but whether Trican waived compliance is a fact issue for trial.**

Section 1.4(j) allows for disbursement of $2,211,921 to Vanguard if it "obtains a 'Certificate of No Tax Due' from the Texas Comptroller . . . that indicates [Vanguard] has no further liability with respect to Tax owed to the State of Texas." The term "Tax" is defined in Section 1.6(o) of the agreement:

all taxes, charges, fees, levies or other assessments including income, gross receipts, excise, property, sales, withholding, social security, unemployment, occupation, use, service, license, payroll, franchise, transfer and recording taxes, motor vehicle tax, fees and charges, imposed by the United States or any state, local or foreign government or subdivision or agency thereof, whether computed on a separate, consolidated, unitary, combined or any other basis, including any interest, fines, penalties or additional amounts attributable to or imposed with respect to any such taxes, charges, fees, levies or other assessments, whether or not disputed.

Vanguard obtained certificates for "Franchise Tax" and "Gross Receipts – Oil & Gas Well Servicing Tax."[19] It did not obtain any other certificates.[20] Because unambiguous conditions precedent "must be performed or fulfilled exactly as set forth in the contract," Trican argues that Vanguard has not satisfied the requirements of 1.4(j) and is not entitled to a distribution from escrow.[21]

### (a) Section 1.4(j) is unambiguous.

Read together with Section 1.6(o), Section 1.4(j) is susceptible to two interpretations: (1) Vanguard must obtain a Certificate of No Tax Due that indicates that Vanguard has no further liability for any of the taxes listed in Section 1.6(o), i.e., a certificate that affirmatively indicates that none of the listed taxes are "owed to the State of Texas," or (2) Vanguard only needs a certificate indicating no further liability for those taxes that it "owed to the State of Texas." As discussed in greater detail below, the court finds the second interpretation to be the only reasonable interpretation of the contract.

---

[19]See March 18, 2010, fax from Georgina Chen to Phil Guertin, Exhibit D to Trican MSJ, Docket Entry No. 27-9.

[20]Response to Request for Admission No. 3, Exhibit H to Trican MSJ, Docket Entry No. 27-11, p. 4.

[21]Trican MSJ, Docket Entry No. 27, p. 10 (quoting Beard Family P'ship v. Commercial Indem. Ins. Co., 116 S.W.3d 839, 844 (Tex. App.—Austin 2003, no pet.).

-9-

In its Motion for Summary Judgment Trican advocated the first reading, namely that "Vanguard is required to obtain a Certificate of No Tax Due indicating no further liability with respect to all taxes listed in § 1.6 of the Escrow Agreement, including, without limitation, sales and use taxes (including motor vehicle taxes)."[22] However, as Vanguard points out, this reading is not reasonable, given that Section 1.6(o) includes social security tax, and "[c]learly, the Texas Comptroller's Office would never issue such a certificate."[23] Changing course, Trican now argues that Section 1.4(j) requires a Certificate "not with regard to all Taxes, but rather, with regard to all which are 'owed to the State of Texas.'"[24]

Both parties have relied extensively on extrinsic evidence of their intent at the time they entered into the Escrow Agreement. Under Texas law "[o]nly where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." <u>Nat. Union Fire Ins. Co. of Pittsburgh, PA v. CBI</u>

---

[22]<u>Id.</u> at 11-12 ¶11.

[23]Vanguard MSJ, Docket Entry No. 29, p. 12 ¶31.

[24]Trican Well Service, L.P.'s Response to Vanguard Stimulation Services, LLC's Cross-Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment ("Trican Reply"), Docket Entry No. 33, pp. 4-5 ¶7. This suggests a potential third reading, that Vanguard needs to obtain a Certificate for every category of taxes collected by the State of Texas. As the following discussion indicates, that is not a reasonable interpretation of the contract.

-10-

Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted).
However, it is well established that "the test for determining the
meaning of contract language is not what the parties intended it to
mean but what a reasonable person in the position of the parties
when the contract was entered, aware of all relevant circumstances,
would have thought it meant." 11 Williston on Contracts § 30:6 (4th
ed.). Therefore, "[w]hile parol evidence of parties' intent is not
admissible to create an ambiguity, a contract may be read in the
light of the surrounding circumstances to determine whether an
ambiguity exists." Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d
738, 741 (Tex. 1998) (citation omitted).

Section 1.4(j) provides for the release of $2,211,921 should
Vanguard obtain a Certificate of No Tax Due "that indicates
[Vanguard] has no further liability with respect to Tax owed to the
State of Texas." In communications prior to the signing of the
contract, the parties estimated that Vanguard's potential Texas tax
liability was $2,211,921, the amount specified in the contract.[25]
This amount included three types of tax: "Use Tax on Materials,"
"2.42% Sales Tax on Services," and "Motor Vehicle Tax."[26] These
three categories of taxes fall within the definition of Tax in

---

[25]Equipment Tax, Sales and Use Tax Liability Estimate, Exhibit
B to Trican MSJ, Docket Entry No. 27-7, p. 4.

[26]Id.

-11-

Section 1.6(o), and were potentially "owed to the State of Texas" at the time of contracting.

"In interpreting the words and conduct of the parties to a contract, a court seeks to put itself in the position they occupied at the time the contract was made." Restatement (Second) of Contracts § 202 cmt. b. (1981). Thus, the court must "construe a contract by determining how the 'reasonable person' would have used and understood its language, considering the circumstances surrounding the contract's negotiation and keeping in mind the purposes intended to be accomplished by the parties when entering into the contract." 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Systems, Inc., 245 S.W.3d 488, 500 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

In light of the circumstances and the purposes of the parties, the court concludes that there is only one reasonable interpretation of Section 1.4(j): it allows for a release of the $2,211,921 held in escrow to cover potential tax liability only if Vanguard obtains a Certificate of No Tax Due for all categories of taxes that fall within Section 1.6(o)'s definition and that were owed to the State of Texas at the time of contracting.[27] At the time of contracting, Vanguard estimated that it owed use tax, sales tax, and motor vehicle tax to the State of Texas totaling $2,211,921. Those categories fall within Section 1.6(o)'s

_____

[27]Section 1.6(o) expressly includes taxes that are "disputed."

-12-

definition. Since entering into the Escrow Agreement, Vanguard has not obtained Certificates of No Tax Due indicating that it "has no further liability" with respect to all of those categories of tax. Vanguard therefore has not satisfied the conditions precedent to release of $2,211,921 under Section 1.4(j).[28]

Vanguard argues that because the Comptroller will only issue a Certificate of No Tax Due for taxes for which the company was permitted, and Vanguard was not permitted for motor vehicle tax, which accounts for over $2 million of the funds in escrow, the above reading of Section 1.4(j) renders performance impossible. "It is beyond dispute that the parties could not have intended a result that was objectively impossible," Vanguard argues, and therefore an "interpretation of Section 1.4(j) as requiring Vanguard to obtain Certificates of No Tax Due for any Texas taxes other than those for which it had received permits from the State of Texas is untenable."[29] The definition of "Tax" in Section 1.6(o)

---

[28]This reading is also consistent with the Texas Tax Code, which requires "the successor to the seller or the seller's assignee" to "withhold an amount of the purchase price sufficient to pay the amount due [from the seller] until the seller provides a receipt from the comptroller showing that the amount has been paid or a certificate stating that no amount is due." Tex. Tax Code § 111.020. "Laws which are in existence at the time of the making of the contract enter into and become a part of such contract as if expressly referred to or incorporated therein." McCreary v. Bay Area Bank & Trust, 68 S.W.3d 727, 733 (Tex. App.--Houston [14th Dist.] 2001, pet. dism'd).

[29]Vanguard MSJ, Docket Entry No. 29, p. 11 ¶28.

-13-

does not include this limitation, however, nor is it fairly derived from the wording of Section 1.4(j) itself.

Vanguard nevertheless argues that "the Court must 'avoid construing [a contract] in a manner which makes performance impossible.'"[30] See Wade Oil & Gas, Inc. v. Telesis Operating Co., Inc., 417 S.W.3d 531, 538 (Tex. App.—El Paso 2013, no pet.) (citing Republic Nat. Bank of Dallas v. Nw. Nat. Bank of Fort Worth, 578 S.W.2d 109, 115 (Tex. 1978) ("If two constructions are possible, a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless.")).

Vanguard argues that obtaining Certificates for taxes for which it was not permitted would have been impossible. Trican counters that "[i]t is true that Certificates are issued only for permitted taxes, but there is no reason to believe, however, that Vanguard could not have applied for permits, filed returns, and then requested a Certificate of No Tax Due with regard to sales, use and motor vehicle taxes."[31] In response, Vanguard points to Section 1.3, which requires that it request the Certificates within five business days of execution of the Escrow Agreement.[32] Vanguard

[30] Id. ¶30.

[31] Trican Reply, Docket Entry No. 33, p. 5 ¶8.

[32] See Plaintiff Vanguard Stimulation Services, LLC's Reply in Support of Cross-Motion for Summary Judgment ("Vanguard Reply"),
(continued...)

argues that "[i]t would have been physically impossible to accomplish all of those activities within the time period mandated by the Escrow Agreement."[33] Therefore, Vanguard argues, the only reasonable interpretation of Section 1.4(j) is that "the parties intended for Vanguard to obtain all Certificates of No Tax Due that it could possibly obtain, based on the facts known to the parties when the agreement was signed, while still complying with the strict time period (five Business Days) unambiguously imposed by Section 1.3."[34]

But this is not what Section 1.4(j) says. Nor does the plain text of the Escrow Agreement lend itself to this interpretation. First, it strains common sense that Vanguard would be entitled to a release of the full amount of tax liability upon proof that less than the full amount has been resolved. This is particularly evident in light of Section 1.4(l), which allows for release of less than the full amount on an item-by-item basis should Vanguard either pay individual amounts of taxes or provide "reasonably satisfactory evidence" that such amounts have "been resolved and no further liability exists." Read in the context of the surrounding provisions, the only reasonable interpretation of Section 1.4(j) is

---

[32] (...continued)
Docket Entry No. 37, p. 7 ¶20.

[33] Id.

[34] Id. at 8 ¶24.

-15-

that it entitles Vanguard to a release of all of the funds set aside for Texas tax liability upon proof that it has no further liability with respect to all of its Texas taxes.

Second, even if the court were to read Section 1.4(j) as Vanguard suggests, compliance would still, arguably, be impossible. Under Vanguard's interpretation, Section 1.4(j) allows for a release if Vanguard obtains "all Certificates of No Tax Due that it could possibly obtain" without applying for additional permits or filing tax returns. But if the parties estimated that Vanguard had tax liability pertaining to taxes for which it was not permitted, and those amounts were included in the total amount held in escrow, how could obtaining certificates only for the permitted taxes "indicate[] [Vanguard] has no further liability" with respect to "Tax owed to the State of Texas"? To reach this result the court would have to read "Tax" to mean only those categories of tax for which Vanguard was permitted. The text of the Escrow Agreement does not support such a reading.

A better application of the preference for possibility of performance is to read Section 1.4(j)'s requirement of compliance with Section 1.3 as being satisfied where, as here, Vanguard made an initial application within five business days, even if additional steps are required to obtain the Certificate. The court therefore concludes that (1) Vanguard satisfied the requirements of

1.3,[35] and (2) under Section 1.4(j) Vanguard may still apply for a permit, file a tax return, or take whatever other steps are necessary to obtain a Certificate of No Tax Due with respect to its other potential liabilities.  In the meantime, however, Vanguard has not satisfied Section 1.4(j), and it is not entitled to distribution of the $2,211,921 in escrow.

### (b) **Whether Trican waived strict compliance with Section 1.4(j) is a fact issue for trial.**

Although Vanguard has not demonstrated that it satisfied the conditions precedent to a distribution under Section 1.4(j), it has presented evidence that Trican waived strict compliance with that provision.  Vanguard has provided evidence that after it received the Certificates for Franchise Taxes and Oil & Gas Well Servicing Taxes, its controller, Phil Guertin, prepared a supplemental request specifically covering Motor Vehicle Tax and Sales & Use Tax.[36]  Guertin alleges that after he emailed the proposed request to Trican's manager of taxation, Kelwin Lee, Guertin and Lee then spoke by phone:  "Mr. Lee told me that Trican was concerned that if

---

[35]See Escrow Agreement, Exhibit B to Complaint, Docket Entry No. 1-2, p. 1 (defining "Effective Date" as March 2, 2010); id. p. 2 § 1.3 (requiring Vanguard to apply for a Certificate within five business days of the Effective Date); March 4, 2010 letter from Phil Guertin to Texas Comptroller of Public Accounts, Exhibit 1-B to Vanguard MSJ, Docket Entry No. 29-1, p. 35 (requesting Certificate of No Tax Due).

[36]See Supplemental Declaration of Phil Guertin, Exhibit 4 to Vanguard Reply, Docket Entry No. 37-1, p. 2 ¶5; April 6, 2010, email from Phil Guertin to Kelwin Lee, Exhibit 4-C to Vanguard Reply, Docket Entry No. 37-1, pp. 10-11.

-17-

Vanguard filed the request . . . it might trigger an audit by the Texas Comptroller's office. Mr. Lee told me that Trican did not want Vanguard to file the Supplemental Request, and I did not file the request."[37] While not framed as such, the court construes Vanguard's factual allegations as a defense of waiver. In response, Lee concedes that Guertin "contacted [him] regarding a supplemental request" but otherwise denies the allegations: "I did not tell Mr. Guertin that Trican was opposed to the filing of the supplemental request [or] an audit of Vanguard's accounts and did not discourage the filing of the supplemental request."[38] Making all reasonable inferences in favor of the nonmovant, neither party has established that Lee did or did not make the alleged statements. This is a fact issue for trial.

### 2. Section 1.4(l) is ambiguous and leaves fact issues for trial.

In relevant part, Section 1.4(l) states:

With respect to any item of Successor Liability Tax, an amount of the Escrow Fund equal to any such item of Successor Liability Tax (the "Release Amount") is to be released to Seller upon Seller (i) paying such amount of Successor Liability Tax itself or (ii) providing reasonably satisfactory evidence to Purchaser that such amount of Successor Liability Tax has been resolved and no further liability exists, whether due to the expiration of the applicable statute of limitation or

---

[37]Supplemental Declaration of Phil Guertin, Exhibit 4 to Vanguard Reply, Docket Entry No. 37-1, p. 2 ¶6.

[38]Declaration of Kelwin Lee, Exhibit A to Second Motion to Strike, Docket Entry No. 38-1, p. 1 ¶3.

otherwise (in the case of either (i) or (ii), a "Release Event").

Vanguard argues that a Release Event has occurred "because Trican has been relieved of any liability for taxes for which a certificate of No Tax Due was not issued."[39] Section 111.020(a) of the Texas Tax Code requires the purchaser of a business to withhold from the purchase price an amount sufficient to cover the seller's tax liability until the seller can prove payment or provide a certificate stating that no amount is due. However, § 111.020(d) provides that the purchaser may request a Certificate of No Tax due from the comptroller, and if the Comptroller fails to mail the Certificate within 90 days of receiving the request, "the purchaser is released from the obligation to withhold the purchase price or pay the amount due." Because Vanguard and Trican requested a Certificate from the Comptroller in March of 2010 and, to date, the Comptroller has not provided Certificates for the non-permitted taxes, Vanguard argues that this provision of the Tax Code "would protect Trican against liability for all taxes for which a Certificate of No Tax Due was not issued."[40]

Trican counters that because there is no evidence that the Comptroller knew of Vanguard's liability for non-permitted taxes,

---

[39]Vanguard MSJ, Docket Entry No. 29, p. 13 ¶33.

[40]Id. ¶35.

-19-

§ 111.020(d) likely does not apply.[41] Even if it does, Trican argues that the Code only states that the _purchaser_ is released from the obligation to pay the amount due: "The Code says nothing about whether the Successor Liability Tax is resolved or whether any further liability exists."[42]

**(a) Section 1.4(l) is ambiguous.**

Read together with the definitions in Section 1.6(n), Section 1.4(l) is ambiguous as to what Vanguard is required to prove. Unlike Section 1.4(j), which refers to "Tax owed to the State of Texas," Section 1.4(l) refers specifically to "Successor Liability Tax," a defined term:

> Taxes (a) for which the Purchase Parties have successor liability in respect of the Taxes that were the responsibility of the Seller Parties[] and (b) are agreed to by Purchaser and Seller as the basis for Purchaser's requirement that the Escrow Amount include $3,670,266 to provide assurances to Purchaser that Seller would perform its indemnification obligations with regard to Tax-Related Claims.

In light of this language, Section 1.4(l)'s requirement of evidence that "[an] amount of Successor Liability Tax has been resolved and no further liability exists" could refer to (1) evidence that Vanguard has no further liability with respect to that tax or (2) evidence that Trican has no successor liability with respect to that tax, regardless of Vanguard's continued liability. Having

_____

[41]_See_ Trican Response, Docket Entry No. 33, p 7 ¶11 & n.22.

[42]_Id._

-20-

considered the plain text of the contract, the surrounding circumstances, and the purpose of the agreement, the court concludes that both interpretations are reasonable. Therefore, because Section 1.4(1) is ambiguous, summary judgment is not appropriate.[43]

Furthermore, fact issues remain for trial. First, neither party has proven that Trican's dissatisfaction with Vanguard's proffered evidence is reasonable or unreasonable as a matter of law. Second, if producing reasonably satisfactory evidence requires Vanguard to apply for permits, file taxes, or take other related steps, Vanguard's performance may be excused if Trican has prevented Vanguard from performing.

---

[43]Apparently urging the court to construe the Escrow Agreement against the drafter, Vanguard states that Trican inserted Section 1.4(1) into the document, and it points to a prior draft as evidence. See Vanguard Response, Docket Entry No. 29, p. 7 ¶11; Declaration of William Twomey, Exhibit 3 to Vanguard Response, Docket Entry No. 29-3, p. 1 ¶3; GWS Draft, Exhibit 3-A to Vanguard Response, Docket Entry No. 29-3, pp. 7-28. The draft, however, shows only that Trican modified the section that would become 1.4(1), labeled Section 1.4(m) in the draft, and that it did so in a way that neither introduced the ambiguity at issue here nor altered the two fair readings to which the section is susceptible. See id. at 10-11 ¶(m). The court therefore declines to resolve the ambiguity by construing Section 1.4(1) against Trican. (The court also notes that Vanguard counsel's declaration that Trican added Section 1.4(1) to the draft is correct but misleading. The evidence indicates that Trican added a section labeled 1.4(1) in the GWS Draft, but that is not the relevant provision in the final agreement).

## (b) Trican's asserted dissatisfaction with Vanguard's evidence creates a fact issue.

Where a contract contains a satisfaction clause and the person to be satisfied is a party to the contract, the Texas Supreme Court applies a reasonableness standard to that party's refusal to accept the tendered performance. See Black Lake Pipe Line Co. v. Union Const. Co., 538 S.W.2d 80, 88-89 (Tex. 1976), overruled on other grounds by Sterner v. Marathon Oil Co., 767 S.W.2d 686 (Tex. 1989). "The general rule in such cases is that the judgment of the party regarding the adequacy of performance will be upheld if made in good faith." Id. "This is an objective standard which does not seek to find the mental state of satisfaction of that party, but rather whether the performance would satisfy a reasonable person." Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc., 760 S.W.2d 298, 302 (Tex. App.--Texarkana 1988, writ denied). "Whether a party acted in good faith and was honestly dissatisfied—that is, was objectively reasonable—is generally a question of fact." Clover Staffing, LLC v. Johnson Controls World Services, Inc., 465 F. Supp. 2d 670, 684 (S.D. Tex. 2006). Drawing all reasonable inferences in favor of the nonmovant, neither Vanguard nor Trican has established that Vanguard's evidence is or is not "reasonably satisfactory." This is a fact issue for trial.[44]

_____

[44]Under Texas law, satisfaction clauses are reviewed under two different standards. Where the person to be satisfied is a party to the contract, courts apply the objective reasonableness standard (continued...)

-22-

**(c) Vanguard's performance may be excused if Trican has prevented Vanguard from performing.**

Vanguard alleges that Trican is in possession of all the records necessary for Vanguard to resolve its tax liabilities.[45] Prevention by one party of another party's performance of a condition precedent generally excuses the other party's performance. Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Similarly, "[w]hen the obligation of a party to a contract depends upon a certain condition's being performed, and the fulfillment of the condition is prevented by the act of the other party, the condition is considered fulfilled." Id. Vanguard has provided evidence that it requested the necessary documents from Trican during the pendency of this litigation, but that Trican has not made them available.[46]

_____

[44](...continued)
outlined above. However, "[w]here performance is subject to the satisfaction of a third party, the decision of that party is final and conclusive, in the absence of fraud, misconduct, or gross mistake." 14 Tex. Jur. 3d Contracts § 308. Trican cites Tribble & Stephens Co. v. RGM Constructors, L.P., 154 S.W.3d 639, 652-54 (Tex. App.—Houston [14th Dist.] 2004, pet. denied), in support of its argument that the court must defer to Trican's judgment, see Trican MSJ, Docket Entry No. 27, pp. 14-16. However, the contract in Tribble required satisfaction of "a designated third party," in that case, the architect. Because Trican is a party to the Escrow Agreement, the objective reasonableness standard applies, and Trican's statement of the law is inapt.

[45]See Supplemental Declaration of Phil Guertin, Exhibit 4 to Vanguard Reply, Docket Entry No. 37-1, p. 2 ¶7.

[46]See Declaration of Lawrence J. Hilton and Exhibits, Plaintiff Vanguard Stimulation Services, LLC's Response to Trican Well
(continued...)

-23-

Whether this excuses Vanguard's performance of conditions precedent to a release under Section 1.4(1) is a fact issue for trial.[47]

### 3. A "Release Event" has occurred with respect to the $24,647 of "Sales Tax on Services."

As of March 1, 2010, Vanguard estimated that it owed $24,647 for "2.42% Sales Tax on Services," and this amount was part of the $2,211,921 held in escrow.[48] Vanguard argues that this amount was, in fact, referable to the "Oil & Gas Well Servicing Tax" for which it obtained a Certificate of No Tax Due in March of 2010. The Texas Tax Code imposes a 2.42% tax "on each person who engages in the business of providing any oil well service for another for consideration." Tex. Tax Code §§ 191.082, 191.083. The court has not identified any other 2.42% tax in the Code.

---

[46] (...continued)
Service, L.P.'s Motion to Strike ("Response to Second Motion to Strike"), Docket Entry No. 39, pp. 6-12; see also Trican's Second Motion to Strike, Docket Entry No. 38, p. 6 n.7 ("Vanguard . . . has now made a request for documentation in order to be able to obtain permits, prepare and file tax returns, and respond to audits by the Comptroller for the State of Texas.").

[47] Vanguard has emphasized that it is not asserting an impossibility defense. See Vanguard Response to Second Motion to Strike, Docket Entry No. 39, p. 3. Nevertheless, the court construes Vanguard's latest factual allegations as a defense of excuse: "Vanguard cannot now prepare any tax filings, and will never be able to do so, unless and until Trican provides the necessary documents, which Vanguard has repeatedly requested without a response." Id. at 4.

[48] The parties do not dispute this. See also Equipment Tax, Sales and Use Tax Liability Estimate, attachment to March 1, 2010, email from Gerik Degner to Bill Twomey, Exhibit B to Trican MSJ, Docket Entry No. 27-7, p. 4.

Vanguard has provided copies of a tax return and check payable to the Comptroller for the 2.42% Oil & Gas Well Servicing tax for the month of February 2010.[49] The amount paid was \$31,645.61.[50] While this is not evidence that Vanguard paid the \$24,647 due as of March 1, 2010, it confirms that Vanguard was paying a 2.42% tax on services referred to as the "Oil & Gas Well Servicing Tax" within weeks of closing. Absent any evidence to the contrary, the only reasonable inference is that the "2.42% Sales Tax on Services" is the 2.42% "Oil & Gas Well Servicing" tax.[51]

Vanguard obtained a Certificate of No Tax Due for the Oil & Gas Well Servicing Tax in March of 2010 and provided it to Trican.[52] Trican offers no reason why this would not be "reasonably satisfactory evidence" that the 2.42% Sales Tax on Services "has been resolved and no further liability exists." The court therefore concludes that a Release Event has occurred under Section 1.4(1) with respect to the \$24,647 held in escrow for Sales Tax on Services. As contemplated by Section 3.5 of the Escrow Agreement,

---

[49]See Exhibit 4-A to Vanguard Reply, Docket Entry No. 37-1, pp. 4-5.

[50]Id.

[51]Trican has not disputed this. It merely argues that Vanguard is barred from asserting such a claim when it did not do so in its original complaint. See Trican's Second Motion to Strike, Docket Entry No. 38.

[52]See Certificate of No Tax Due, Exhibit D to Trican MSJ, Docket Entry No. 27-9, p. 4.

the court will order the Escrow Agent to release the sum of $24,647 plus interest to Vanguard.

## III. Motions to Strike

Trican has filed two motions to strike evidence submitted by Vanguard.[53]

### A.  First Motion to Strike

In its First Motion to Strike, Trican objects to portions of declarations by Gerik Degner and William Twomey on behalf of Vanguard, as well as exhibits thereto.[54]  Trican's motion is moot with respect to Degner's affidavit and exhibit, since the court has not relied on that evidence.  With respect to Twomey's affidavit and exhibit, Trican's motion will be granted.  Twomey's affidavit indicates that Trican drafted Sections 1.3, 1.4(j) and 1.4(l) of the Escrow Agreement.[55]  The doctrine of construing a contract against the drafter applies only where the language at issue is ambiguous.  Lewis v. Foxworth, 170 S.W.3d 900, 903 (Tex. App.—Dallas 2005, no pet.).  Because Sections 1.3 and 1.4(j) are not ambiguous, evidence of who drafted them is properly excluded.

---

[53]See First Motion to Strike, Docket Entry No. 34; Second Motion to Strike, Docket Entry No. 38.

[54]See First Motion to Strike, Docket Entry No. 34, pp. 1-3 (objecting to Declaration of William Twomey, Docket Entry No. 29-2, pp. 1-2 ¶4 and Exhibit 2-B, and Declaration of William Twomey, Docket Entry 29-3, p. 1 ¶3 and Exhibit 3-A)

[55]See Affidavit of William Twomey, Exhibit 3 to Vanguard MSJ, Docket Entry No. 29-3, p. 1 ¶3.

While Section 1.4(1) is ambiguous, the evidence proffered by Vanguard does not support the assertion that Trican drafted that section, see footnote 43 above, and is therefore irrelevant.

## B. Second Motion to Strike

In its Second Motion to Strike, filed in response to Vanguard's Reply in Support of its Motion for Summary Judgment, Trican objects to Vanguard's "new claim, never plead or asserted in discovery or otherwise" that it is entitled to release of $24,647 held in escrow, as well as Vanguard's evidence in support thereof.[56] Trican cites Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005), and argues that this claim "is improperly raised at this time and should be stricken." The Fifth Circuit in Cutrera held that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Id. As Vanguard correctly points out, however, the liberal pleading standards of Rule 8 merely require a short and plain statement that gives the defendant fair notice of what the claim is and the grounds upon which it rests. "Trican was well aware of the nature of the dispute," and "the only reason Vanguard did not plead the [$24,647] claim with more specificity [until its reply brief] is because the information was in the possession of Trican, and was not produced to Vanguard until after the Summary Judgment Motion

---

[56]See Second Motion to Strike, Docket Entry No. 38, p. 2 ¶2.

was filed."[57]  Trican's objection to this claim and the evidence in support of it will be denied.

Trican also objects to the declaration of Lawrence Hilton and exhibit thereto.[58]  Because the court has not relied on this evidence, Trican's objection is moot.

Trican raises two additional objections.  In its Reply in Support of its Motion for Summary Judgment, Vanguard made two new allegations: (1) "Trican instructed Vanguard not to request specific Certificates of No Tax Due for motor vehicle taxes and sales taxes," and (2) "Vanguard could not (and cannot) prepare returns or submit to an audit because Trican has all the records of the business."[59]  Vanguard supports these allegations with a "supplemental" declaration from Phil Guertin, Vanguard's former controller, and exhibits thereto.[60]  Trican correctly objects that

_____

[57]Furthermore, even if this did constitute a "new claim," "[u]nder [Fifth Circuit] precedent, when a claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)."  Riley v. School Bd. Union Parish, 379 Fed. Appx. 335, 341 (5th Cir. 2010) (citing cases); see also Debowale v. U.S. Inc., 62 F.3d 395 (5th Cir. 1995) ("The district court should have construed Debowale's Bivens claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under Fed. R. Civ. P. 15(a) and granted it.").

[58]Second Motion to Strike, Docket Entry No. 38, pp. 5-6 ¶6.

[59]Vanguard Reply, Docket Entry No. 37, pp. 4-5.

[60]Supplemental Declaration of Phil Guertin, Exhibit 4 to Vanguard Reply, Docket Entry No. 37-1, p. 2 ¶¶5-7.

evidence of the parties' conduct after entering into the Escrow Agreement is irrelevant to construing that agreement. The court has not relied on Vanguard's evidence for that purpose, so Trican's objection is moot. Trican also objects that Guertin's declaration is untimely, as he could have provided this information earlier, and that Vanguard is barred from asserting the affirmative defense of impossibility because it did not do so in its first responsive pleading.

"Generally, under Rule 8(c) affirmative defenses must be raised in the first responsive pleading." Pasco v. Knoblauch, 566 F.3d 572, 577 (5th Cir. 2009). "However, where the matter is raised in the trial court in a manner that does not result in unfair surprise technical failure to comply precisely with Rule 8(c) is not fatal." Id. (internal quotation marks, alterations, and citation omitted). "An affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." Id. (same). The Fifth Circuit "does not take a formalistic approach to determine whether an affirmative defense was waived. Rather, [it] look[s] at the overall context of the litigation and [has] found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial." Id.

Vanguard states that it is not arguing impossibility as an affirmative defense,[61] so Trican's objection is moot in that respect. Nevertheless, the court construes Vanguard's allegations as defenses of waiver and excuse. The court sees no prejudice to Trican in allowing these defenses as they do not alter the outcome of either party's motion for summary judgment—Section 1.4(l) is ambiguous whether or not Vanguard asserts defenses—and Trican has time to prepare its arguments for trial. Trican's objections to Guertin's Supplemental Declaration and exhibits in support will therefore be denied.

## IV.  **Conclusions and Order**

For the reasons stated in Section II above, Trican Well Service, L.P.'s Motion for Summary Judgment (Docket Entry No. 27) is **DENIED**, and Plaintiff Vanguard Services, LLC's Cross-Motion for Summary Judgment (Docket Entry No. 29) is **GRANTED IN PART** and **DENIED IN PART**.

For the reasons stated in Section II.B.3 above, the court **DECLARES** that a "Release Event" has occurred within the meaning of Section 1.4(l) of the Escrow Agreement with respect to the $24,647 held in escrow for "Sales Tax on Services," and Defendant Wells

---

[61]Vanguard Response to Second Motion to Strike, Docket Entry No. 39, p. 3.

Fargo Bank, N.A., is **ORDERED** to release this amount plus interest to Plaintiff Vanguard Stimulation Services, LLC.

For the reasons stated in Section III above, Trican Well Service, L.P.'s Objections and Motion to Strike Vanguard Stimulation Services, LLC's Evidence (Docket Entry No. 34) is **MOOT IN PART** and **GRANTED IN PART**, and Defendant Trican Well Service, L.P.'s Objections and Motion to Strike Vanguard Stimulation Services, LLC's Reply in Support of its Cross-Motion for Summary Judgment and Evidence in Support of Same (Docket Entry No. 38) is **DENIED IN PART** and **MOOT IN PART**.

The parties will file an Amended Joint Pretrial Order by February 6, 2015, and Docket Call will be held on February 13, 2015 at 3:00 PM.

**SIGNED** at Houston, Texas, on this 15th day of December, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE